United States District Court
District of Massachusetts

|  |  |
|---|---|
| LABELLE CHEVROLET, LLC,<br>    Plaintiff,<br><br>    v.<br><br>GENERAL MOTORS, LLC,<br>    Defendant. | Civil Action No.<br>10-10366-NMG |

**MEMORANDUM & ORDER**

GORTON, J.

Plaintiff LaBelle Chevrolet, LLC ("LaBelle"), a wind-down Chevrolet motor vehicle dealership, has brought suit against defendant General Motors, LLC ("New GM") seeking preliminary injunctive relief pending the outcome of the arbitration elected by LaBelle pursuant to Section 747 of the Federal Consolidated Appropriations Act of 2010 ("Section 747").

I. **Background**

LaBelle became a Chevrolet dealer in August, 2004, and operated for five years in Bridgewater, Massachusetts under General Motors Corporation ("Old GM"). In 2009, Old GM filed for bankruptcy and on July 10, 2009, all of its assets were acquired by New GM. New GM is a corporate entity, created and owned by the United States government, for the purposes of continuing the manufacturing and sale of the General Motors line of vehicles. In the sale of assets, New GM acquired the contractual

obligations of Old GM with respect to its dealerships. Not all of the original dealerships, however, were transferred to New GM for the purpose of continuing as GM dealers. Approximately 1,000 dealers were informed that they would be terminated as a result of the bankruptcy unless they signed wind-down agreements and waived their statutory rights under Massachusetts General Law Chapter 93B. LaBelle entered into such a wind-down agreement with New GM. The wind-down agreement stated, in relevant part, that LaBelle would remain an authorized Chevrolet dealer until October 31, 2010, at which time it would cease its operations and receive a termination payment.

LaBelle recently sought to continue as a Chevrolet dealer under Section 747 of the Federal Consolidated Appropriations Act. The Act, which is intended to address some of the inequities faced by dealerships which were unilaterally terminated when parent automotive companies such as Old GM filed for bankruptcy, provides for an arbitration process whereby dealerships may seek reinstatement of their franchise agreements. In determining whether a dealership should be reinstated, the arbitrator considers factors such as, *inter alia*, the dealership's profitability in recent years, its overall business plan, the demographic and geographic characteristics of its market territory and its current economic viability.

On January 22, 2010, LaBelle filed a timely Demand for Arbitration seeking to be reinstated as a Chevrolet dealer pursuant to Section 747. Later that month, LaBelle learned that McGee Chevrolet, Inc. ("McGee"), a competitor, had been authorized to relocate from Middleboro, Massachusetts to a dealership location in Raynham, Massachusetts which is part of LaBelle's Area of Primary Responsibility ("APR"). McGee had apparently requested the relocation, which was subject to New GM's approval, so that it could move from its dilapidated facility in Middleboro to the modern facility in Raynham. In a letter to LaBelle dated February 16, 2010, New GM asserted that it had approved McGee's relocation and that the relocation would occur in the near future.

Plaintiff now seeks to enjoin temporarily New GM from relocating McGee (or any other Chevrolet dealer) into LaBelle's APR pending the outcome of the ongoing arbitration. Plaintiff also seeks a temporary injunction to prevent New GM from aiding, supporting and/or distributing new Chevrolet vehicles to McGee or any other new or existing Chevrolet dealer that has already been relocated or appointed into LaBelle's market territory.

II. **Analysis**

    A.  **Legal Standard**

To obtain preliminary injunctive relief under Fed. R. Civ. P. 65, a movant must demonstrate

>    (1) a substantial likelihood of success on the merits,
>    (2) a significant risk of irreparable harm if the
>    injunction is withheld, (3) a favorable balance of
>    hardships and (4) a fit (or lack of friction) between
>    the injunction and the public interest.

Nieves-Márquez v. Puerto Rico, 353 F.3d 108, 120 (1st Cir. 2003) (citation omitted). Likelihood of success on the merits is the critical factor in the analysis and, accordingly, a strong likelihood of success may overcome a "somewhat less" showing of another element. See Weaver v. Henderson, 984 F.2d 11, 12 (1st Cir. 1993) (citations omitted); E.E.O.C. v. Astra United States, Inc., 94 F.3d 738 (1st Cir. 1996).

### B. Application

#### 1. Likelihood of Success on the Merits

LaBelle contends that it has a strong likelihood of success on the merits at arbitration because it has met or exceeded all of the criteria for reinstatement under Section 747. In support of that assertion, LaBelle claims, inter alia, that it has met the profitability factor for each of the years between 2006 and 2009, even during a down economic market, and is still a viable dealership.

Since the filing of LaBelle's motion, however, New GM has issued a Letter of Intent ("LOI") reinstating LaBelle as an authorized Chevrolet dealership. New GM asserts that given the reinstatement, LaBelle has now obtained all the rights and

privileges it originally sought through arbitration, thus rendering the arbitration moot.

Labelle responds that the LOI is merely an "amended wind-down agreement" as opposed the comprehensive "sales and service agreement" that it seeks at arbitration. See Consolidated Appropriations Act of 2010, § 747(g) (stating that if the arbitrator finds in favor of the dealer, the manufacturer must provide a "customary and usual letter of intent to enter into a sales agreement" within 7 business days of receiving the arbitrator's decision). LaBelle claims that the LOI differs from a "customary and usual" letter of intent in that 1) it prohibits LaBelle from initiating litigation against New GM on any claims arising out of the Dealer Sales and Service Agreement ("the Dealer Agreement"), the operative contract between New GM and LaBelle, 2) it provides New GM the non-exclusive right to use LaBelle's customer lists and service records and 3) it gives the bankruptcy court continuing jurisdiction over the wind-down agreement.

LaBelle's argument is underwhelming. Even if the LOI lacks several "customary and usual" provisions, those issues have no bearing on whether or not the Court should enter the preliminary injunction to maintain the status quo pending the outcome of the arbitration. To the extent that the relocation of LaBelle's competitor, McGee, to Raynham affects the status quo, it is only

with respect to the factors considered by the arbitrator in determining whether to reinstate LaBelle (i.e., demographic and geographic characteristics, economic viability, etc). Given that New GM has already agreed to reinstatement, the effect of McGee's relocation on those factors is irrelevant. To the extent that the parties disagree about the specific terms of the reinstatement, those issues can either be resolved by the parties or decided by the arbitrator.

Moreover, even if the Court were to enjoin New GM from authorizing the relocation of McGee until after the arbitration (which is scheduled to occur in late June, 2010), that would not prevent New GM from relocating McGee the following day. When LaBelle is reinstated, it will remain subject to the same provisions of the Dealer Agreement to which it was previously bound. Under Article 4.3 of that agreement, the relocation of existing dealerships is within GM's "sole business discretion." Nothing in the language of Section 747 alters New GM's preexisting rights under the Dealer Agreement with respect to dealer network activities during the pendency of the arbitration. Section 747 merely provides that dealers may seek, through binding arbitration, reinstatement of their franchise agreements. It does not, however, amend the terms of those agreements, nor does it provide LaBelle with a right to be free from near-by competition.

LaBelle contends that pursuant to Article 4.3 of the Dealer Agreement, prior to authorizing McGee to move into LaBelle's APR, New GM must, at a minimum, advise LaBelle in writing and give it 30 days to present relevant, counteracting information. LaBelle contends that because New GM has not complied with that requirement, it has breached the terms of the Dealer Agreement as well as the covenant of good faith and fair dealing.[1]

LaBelle's reading of Article 4.3 is, however, clearly mistaken. Although Article 4.3 requires New GM to advise dealers in writing and give them 30 days to respond before "establishing an _additional_ same Line-Make dealer" within their APR, it explicitly notes that, for purposes of Article 4.3, "the relocation of an existing dealer point ... shall _not_ be considered the establishment of an additional Dealer." (emphasis added). It also emphasizes that New GM has

> no obligation to provide notice under Article 4 for a dealer replacement or relocation, and such events are within the sole discretion of General Motors pursuant to its business judgment.[2]

---

[1] Notably, LaBelle has not brought a claim for breach of contract.

[2] Article 4.3 is consistent with Chapter 93 of the Massachusetts General Laws, which provides that

> nothing contained in this section shall prohibit or prevent ... the relocation of an existing motor vehicle dealer to a location within the dealer's own relevant market area; if the proposed new location is not within a 4 mile radius of any other same line motor vehicle dealer.

Accordingly, the contractual provisions of the Dealer Agreement provide LaBelle no grounds upon which to challenge New GM's decision to relocate McGee, regardless of the outcome of the arbitration.

### 2. Risk of Irreparable Harm

LaBelle asserts that it will suffer irreparable harm if, in the absence of an injunction, McGee is allowed to relocate into its APR. Specifically, LaBelle contends that McGee's relocation will adversely impact the demographic and geographic characteristics of its market territory, thereby jeopardizing its ability to be reinstated at the arbitration. Given that 1) New GM has already agreed to LaBelle's reinstatement and 2) the Dealer Agreement precludes LaBelle from challenging McGee's relocation, the risk of irreparable harm appears to be overstated.

### 3. Balance of the Hardships

The balance of the hardships weighs against entering an injunction. The risk of harm to LaBelle (discussed above) is minimal, whereas the risk of harm to New GM and its third-party dealer (McGee) is substantial. See Long Term Care Pharm. Alliance v. Ferguson, 362 F.3d 50, 60 (1st Cir. 2004) (stating that the impact on non-parties is a "proper concern in granting or denying in injunction"). McGee claims to have invested

---

M.G.L. ch. 93B § 6(b)(1).

significant time and resources into the relocation and has already received a stream of prospective customers for Chevrolet vehicles at its new location in Raynham. Shutting down the dealership after it has already opened would not only cause hardship to McGee, but might also affect (although more tangentially) New GM's reputation and customer goodwill.

### 4.  Public Interest

It does not appear that a decision to enter or deny the injunction will have a significant impact on the public interest, rendering this factor largely irrelevant.

In sum, given that GM has already approved LaBelle's reinstatement, the arbitration is likely moot and, as such, there is no longer any need to maintain the "status quo" pending its outcome. Although McGee's relocation may ultimately affect LaBelle's Chevrolet sales (and perhaps its future viability as a New GM dealership), nothing in Section 747 alters New GM's rights under the Dealer Agreement to review and approve dealer network change proposals or McGee's right to operate its business at the newly authorized location.

## ORDER

In accordance with the foregoing, Plaintiff's motion for a preliminary injunction (Docket No. 2) is **DENIED**.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated April 2, 2010